AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Use of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-293-0872

) ) ) ) ) )

Case No. 3:21MJ207

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | possession with intent to distribute/distribution of controlled substances |
| 21 USC s. 843(b) | use of telephone communication facility |
| 21 USC s. 846 | conspiracy to possess with intent to distribute/distribute controlled substances |

The application is based on these facts:
See Attached affidavit of Austin Roseberry

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I, Brent Tabacchi, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

*Austin Roseberry*
Applicant's signature

Austin Roseberry, SA of the DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means
FaceTime

Date: 5/26/21

City and state: Dayton, Ohio

*Sharon L. Ovington*

Sharon L. Ovington, US Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Austin M. Roseberry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers:

   a. 513-293-0872 ("Target Telephone 1" or "TT1"), a cellular device serviced by T-Mobile with IMSI 310260043488790 and subscribed to in the name of Jamal Mitchell, 2036 Quail Ct., Apt. 17, Cincinnati, Ohio, which is more fully described in Attachment A1.

   b. (513) 479-7955 ("Target Telephone 2" or "TT2"), a cellular device serviced by T-Mobile with IMSI 310240135298471 and subscribed to in the name of Mike Lowery, 66 Ludlow Street, Hamilton, Ohio 45011, which is more fully described in Attachment A2.

(collectively, the "**Target Telephones**"). The location information to be seized from the **Target Telephones** is described herein and in Attachments B-1 through B-2.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-

3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Dayton Resident Office. As such, I am an "investigative or a law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, et. sec., and Title 18, United States Code, Section 2516.

4. I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education, and experience (including debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement.

5. I have participated in the investigation and prosecution of complex narcotics enterprises, including major narcotics organizations. These investigations included the use of court-ordered eavesdropping. I have also conducted extensive analyses of telephone billing records for telephones used by narcotics traffickers. Members of the Dayton Resident Office also have extensive experience in narcotics investigations, especially involving high-level

narcotics traffickers and money launderers. I have had and continue to have conversations with them concerning this and other narcotics related investigations. I have worked on surveillance and enforcement teams working in conjunction with court authorized T-III intercepts. I have worked as a monitor, listening to T-III intercepts, determining minimization of intercepts, and directing surveillance and enforcement teams to take action based on T-III intercepts that I monitored.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances/distribution of controlled substances), 843(b) (use of a communication facility to facilitate a felony drug offense) and 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) have been committed, are being committed, and will be committed by Clemente Quezada and the users of the **Target Telephones.** There is also probable cause to believe that the location information described in Attachments B-1 through B-4 will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

8. The DEA is currently investigating a Dayton, Ohio based fentanyl and methamphetamine drug trafficking organization (DTO). During this investigation, DEA has identified Clemente Quezada as an individual who coordinates the shipment and distribution of kilogram quantities of illegal drugs within the Dayton, Ohio region.

9. During late March 2021 and again during early May 2021, DEA sought and received orders from the Honorable Thomas M. Rose, District Court Judge of the United States District Court for the Southern District of Ohio, authorizing interception of wire communications over telephone number 937-219-9324, a cellular telephone used by Clemente Quezada. Prior to the court-authorized interceptions, DEA employed surveillance and consensually monitored calls to learn that Quezada used this number to coordinate the delivery of fentanyl to a purported customer during February 2021. DEA has executed Judge Rose's orders, and during March, April and May 2021, it has intercepted wire communications between Quezada at 937-219-9324 and various individuals involving drug transactions as detailed below.

A. **Quezada and Target Telephone 1 Engage in Drug-Related Conversations During March and April 2021**

10. During late March 2021, DEA lawfully intercepted a call between Quezada and the user of Target Telephone 1 (namely, 513-293-0872) in which Quezada negotiated the sale of a half-kilogram of illegal controlled substances to the user of Target Telephone 1. On or about March 31, 2021, DEA conducted surveillance of Quezada and tracked him as he travelled from his home at 1035 Harvard Avenue, in Fairborn, Ohio to 2603 Knorr Avenue, Cincinnati, Ohio.

Notably, as Quezada travelled to this location, he and the user of Target Telephone 1 engaged in phone conversations in which they confirmed their plan to meet and complete the drug transaction.

11. Upon arriving at 2603 Knorr, Quezada parked in front of the residence. Around that time, Quezada placed an outgoing call to Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

TT1: Two minutes, bro. I'm pullin' up.

QUEZADA: Hello?

TT1: Yeah, MeMe [PHONETIC] I'm pullin' up in two minutes right here, I'm right here.

QUEZADA: A'ight.

TT1: A'ight, a'ight.

Shortly thereafter, a blue Infiniti sedan registered to Sheila Leonard arrived at the residence. Around that time, Quezada received an incoming call from Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

QUEZADA: I see you.

TT1: A'ight.

QUEZADA: A'ight.

Around this time, Quezada and the driver of the Blue Infiniti exited their respective vehicles and entered the residence at 2603 Knorr. While Quezada remained inside, DEA watched as numerous other vehicles arrived at this location, their occupants entered the home for short periods of time, and then departed. Based on my training and experience, this pattern of activity – namely, heavy, short-term traffic at a location – is consistent with residence being used as stash

house or distribution point for narcotics. Quezada eventually left 2603 Knorr, returned to his car, and drove to the Dayton area. Based on these events, I believe that Quezada delivered controlled substances to the user of Target Telephone 1, who was also the driver of the blue Infiniti.

12. On or about April 22, 2021, Quezada received an incoming call from Target Telephone 1 and engaged in the following lawfully-intercepted conversation with its user (identified as TT1):

QUEZADA: Hello.

TT1: What's up. MeMe [Phonetic]?

QUEZADA: What's goin' on witchu', man?

TT1: Nothin'. What's goin' on?

QUEZADA: I tryin' to see how you lookin' over there, man.

TT1: I just talked to 'im last night or was it last night when you talk to 'im?

QUEZADA: Uh, I didn't talk to him last night, he text me like around twelve, thirty.

TT1: He say he was gonna um, holler at you. I guess he's gonna come down and give me some, I guess uh, some little stronger or whatever. 'Cause I told 'im like it was, it was goin', but then slowed up. So, I mean, I still got a nice amount.

[Voices Overlap]

QUEZADA: That's fo' sho'. That's what the reality do [Unintelligible]. I dunno. It's whatever.

TT1: I mean, I dunno what he did, just that's what he told me. We talked prolly 'bout thirty, forty-five minutes. We just talkin' and shit.

QUEZADA: [Coughs] Okay [Sneezes], he'll prolly call me later.

TT1: Okay, uh... Just let me know.

QUEZADA: A'ight.

TT1: A'ight.

Based on my training and experience as well as knowledge of the facts of this case, I know that, in the call detailed above, Quezada and the user of Target Telephone 1 confirmed the prior delivery of controlled substances to the user of Target Telephone 1 during late March 2021. Specifically, the user of Target Telephone 1 indicated that the drugs received from Quezada were moving slowly and that he still had a quantity of controlled substances for sale. DEA has reviewed toll records for Target Telephone 1, and it remains active as of May 2021.

B. **Quezada and Target Telephone 2 Engage in Drug-Related Conversations During March 2021**

13. On March 29, 2021, Quezada received an incoming call from Target Telephone 2 (namely, (513) 479-7955) and engaged in the following lawfully-intercepted conversation with its user (identified as TT2):

TT2: Hello.

QUEZADA: What's up bruh?

TT2: What's good with it?

QUEZADA: No much, what's going on witchu? How you looking?

TT2: Uh, yeah, I can get the rest of it [unintelligible]. Let me call you back in five minutes. I'mma 'bouta scratch it up the rest of it now. I'mma call you right back.

QUEZADA: Uh, uh-huh. Um, it don't have to be prolly for, in the [unintelligible] tomorrow you gonna have to come this way home, and we're gone figure it out. Or try that today.

[Voices Overlap]

QUEZADA: I'll try that today. I said, Imma try that today. I ain't be able to meet up with you today tho'.

TT2: Okay, than. A'ight, A'ight. Well, just I guess whenever you ready, just hit me.

QUEZADA: Hopefully tomorrow.

TT2: Okay then.

QUEZADA: So, you don't want me to bring you the same thing, I'm bringing you half?

TT2: You say what?

QUEZADA: Whatchu wanna do? Bring about half?

TT2: Uhh . . . I prolyl, uh, I prolly wait like another week or so, so I can just give you straight ca-, you know what I mean? Give you the money for it.

QUEZADA: A'ight

TT2: Just in case is, just in case is slow, you know what I'm sayin? So, you won't be waitin' around.

QUEZADA: A'ight

TT2: A'ight. Yes, just hit me then, whenever you're ready there.

QUEZADA: Hey bro um . . . I'm over on Northgate.

    [Voices Overlap]

TT2: Yeah?

QUEZADA: I'm over on the Northgate, if you wanna meet me over ther?

TT2: You say Northgate?

QUEZADA: Yeah.

TT2: Right now?

QUEZADA: Not right now, I'm still on my way. Like prolly I'll be out there like in an hour.

TT2: Okay, um . . . What you said you are going to be at tomorrow morning?

QUEZADA: Uh, nah. I could have, I could have met you halfway somewhere.

TT2: Oh, okay then, A'ight. Well, I'mma . . . Okay then, just call me then.

QUEZADA: Alright. Or we just meet tomorrow halfway, so that's cool.

TT2: Okay then, a'ight.

QUEZADA: A'ight.

Based on my training and experience, and my familiarity with the facts of this case, the user of Target Telephone 2 initially indicated that he was attempting to gather cash to pay for a half kilogram of controlled substance. Quezada essentially indicated that he was willing to meet the user of Target Telephone 2 the following day with the controlled substances and wait for payment at a later time.

    14. On or about March 30, 2021, DEA followed Quezada as he travelled to the outlet malls in Monroe, Ohio. Around the time of this surveillance, Quezada engaged in calls with the user of Target Telephone 2 concerning a drug transaction. Quezada ultimately met with a person believed to be Erick Collins and completed what investigators believed to be a drug transaction. DEA followed Collins back to his residence of 1566 Pleasant Run Dr. Apt 10, Cincinnati, Ohio. Toll records confirm that Target Telephone 2 remains active as of May 2021.

15. Based on the aforementioned information, I believe the **Target Telephones** are being utilized to facilitate the Quezada Drug Trafficking Organization in violation of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances/distribution of controlled substances), 843(b) (use of a communication facility to facilitate a felony drug offense) and 846 (conspiracy to possess with intent to distribute and to distribute controlled substances). The location of the **Target Telephones** would aid in the identification of the users holding and/or utilizing these devices and as well as locate the residences of known members of this organization. Based on my training and experience, I know that individuals involved in the drug trade frequently utilize fictitious subscriber information in an effort to thwart law enforcement detection. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Telephones**. T-Mobile can also collect E-911 Phase II data about the location of the **Target Telephones**, including by initiating a signal to determine the location of the **Target Telephones** on its respective network or with such other reference points as may be reasonably available. I know that this location information will assist law enforcement to identify the user of the **Target Telephones**. Additionally, the location information may also lead law enforcement to locations at which the users of the **Target Telephones** are storing or selling illegal drugs. Additionally, this information will assist law enforcement to observe potential meetings between the users of the **Target Telephones** and other individuals with whom he/she is trafficking narcotics, *i.e.*, coconspirators.

## MANNER OF EXECUTION

16. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrants has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the **Target Telephones** would seriously jeopardize the ongoing investigation, as such a disclosure would give those persons an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

18. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephones** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobiles for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephones** outside of daytime hours.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Austin Roseberry*

Austin M. Roseberry
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
On: 5/26/21

Sharon L. Ovington
United States Magistrate Judge

## **ATTACHMENT A-1**

### **Property to Be Searched**

1. 513-293-0872 ("Target Telephone 1" or "TT1"), a cellular device serviced by T-Mobile with IMSI 310260043488790 and subscribed to in the name of Jamal Mitchell, 2036 Quail Ct., Apt. 17. T-Mobile is a company headquartered 4 Sylvan Way, Parisippany, New Jersey.

2. Information about the location of the Target Telephone 1 that is within the possession, custody, or control of T-Mobile.

## **ATTACHMENT A-2**

1. (513) 479-7955 ("Target Telephone 2" or "TT2"), a cellular device serviced by T-Mobile with IMSI 310240135298471 and subscribed to in the name of Mike Lowery, 66 Ludlow Street, Hamilton, Ohio 45011. T-Mobile is a company headquartered 4 Sylvan Way, Parisippany, New Jersey.

2. Information about the location of the Target Telephone 2 that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B-1

### Particular Things to be Seized

All information about the location of **Target Telephone 1** described in Attachment A-1 for a period of thirty days, during all times of day and night. "Information about the location of **Target Telephone 1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A-1.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-MOBILE, T-MOBILE is required to disclose the Location Information to the government. In addition, T-MOBILE must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-MOBILE's services, including by initiating a signal to determine the location of the **Target Telephone 1** on T-MOBILE's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).